409 So.2d 182 (1982)
Dorothy L. BELLE, Appellant,
v.
GENERAL ELECTRIC COMPANY and Electric Mutual Liability Insurance Company, Appellees.
No. XX-351.
District Court of Appeal of Florida, First District.
February 2, 1982.
Thomas W. Davis, Barton & Cox, Gainesville, for appellant.
*183 Anthony J. Salzman, Jones & Langdon, Gainesville, for appellees.
LARRY G. SMITH, Judge.
The claimant appeals provisions of a workers' compensation order relating to determination of her average weekly wage, and the allowance of offsets to the employer/carrier for group insurance benefits and premiums paid by the employer. We agree with appellant's contention that it was error to allow offsets for disability benefits received by her under the group sickness and accident insurance policy furnished by the employer, and it was error to allow an offset for weekly insurance premiums paid by the employer during the eight-week period she remained off from work due to her injury. However, we reject appellant's contentions that the value of vested vacation benefits should have been included in the computation of her average weekly wage. We also reject the contention that the deputy commissioner erred in denying (or failing to rule upon) appellant's claim for temporary total disability from the period November 15, 1979 to the date of hearing. Affirmed in part and reversed in part.
It has been clearly held that the employer is not entitled to a set-off for sick leave benefits provided through group insurance paid for solely by the employer. Brown v. S.S. Kresge Company, Inc., 305 So.2d 191 (Fla. 1975). The same ruling was applied to pension benefits to which the employer did not contribute. Domutz v. Southern Bell Telephone and Telegraph Company, 339 So.2d 636 (Fla. 1976). In Brown, the court stated, however, that the worker's compensation benefits, when combined with sick leave insurance benefits provided by the employee, should not exceed the claimant's average weekly wage. 305 So.2d at 194.[1] Although appellant contends that this limitation should not apply here since the group insurance benefits were clearly not intended as payments in lieu of compensation,[2] appellant has cited no authority that would authorize us to disregard the directive contained in the Brown opinion.[3]
Turning to that portion of the order allowing an offset for weekly group insurance premiums paid by the employer during the period of disability, we find that this court has recently declared such an offset to be improper. Reese v. Sewell Hardware Company, Inc., 409 So.2d 965 (Fla. 1st DCA 1981). The Reese case disposes of this issue.
With respect to appellant's contention that the amount an employee is entitled to receive for paid vacations should be determined and included in the calculation of "average weekly wage," by adding a fractional part of such vacation pay to the wages received for each working week, we note initially that appellant cites no authority on this point. We concede that the logic of including vacation benefits in the calculation is appealing, and there is at least some authority for this position.[4] However, our reading does not convince us that Florida's Workers' Compensation Law clearly mandates consideration of vacation pay as an addition to the weekly compensation rate in arriving at an employee's average *184 weekly wage.[5] Therefore, in the absence of any evidence or authority that vacation pay has been so considered over the long history of the act's existence, we are persuaded not to disturb the ruling of the deputy commissioner on this point.
Finally, we conclude that since the order contains an explicit finding that the claimant was temporarily and totally disabled from July 2, 1979, to August 28, 1979, there is no merit to appellant's contention that her claim for disability beyond the date November 15, 1979 was not ruled upon. Furthermore, we find the deputy commissioner's order is supported by competent substantial evidence. There is an absence of medical evidence that claimant was unable to work subsequent to November 15, 1979 (the date she was discharged after returning to work for the same employer), and the evidence produced by appellant fails to establish a conscientious effort to return to work, and her inability to do so. Walter Glades Condominium v. Morris, 393 So.2d 664 (Fla. 1st DCA 1981); Lehigh Corporation v. Byrd, 397 So.2d 1202 (Fla. 1st DCA 1981). When the claimant's job is no longer available, and there is no medical evidence of inability to work, it is essential that claimant seek work in order to establish temporary total disability. It must be shown either that the work search was successful, but claimant was unable to perform the work, or alternatively, that the work search was unsuccessful due to inability to work, rather than the unavailability of work. See Four Quarters Habitat, Inc. v. Miller, 405 So.2d 475 (Fla. 1st DCA 1981), and cases cited therein.
AFFIRMED in part and REVERSED in part, and REMANDED for further proceedings consistent herewith.
MILLS, J., concurs.
ERVIN, J., specially concurs with opinion.
ERVIN, Judge, specially concurring.
I concur without reservation in all facets of the majority's opinion except as to the last point raised, to which I concur with the result only. I agree that there was competent and substantial evidence before the deputy commissioner for him to conclude that claimant was not entitled to any disability benefits from November 15, 1979 through the date of the anticipated surgery, for there was no showing by medical evidence that claimant had any continuing disability, nor was there any showing that claimant had made a conscientious work search. As to the latter requirement, the evidence reveals that until two weeks before the hearing, claimant had applied for work only with her former employer, and thereafter with several other prospective employers, none of whom then had any available openings. As we stated in Pearson v. City of Miami Beach, 399 So.2d 1135, 1136 (Fla. 1st DCA, 1981): "The credibility and sufficiency of ... evidence to establish a good faith work search ... remains a factual matter to be determined by the deputy commissioner...." I think, however, the rule the majority has sanctioned requiring a claimant to show that her work search was unsuccessful due to inability to work, rather than because of unavailability of work, ante, is an overly restrictive burden that is contrary to the majority rule. See my views expressed in Lake County Commissioners v. Walburn, 409 So.2d 153 (Fla. 1st DCA, 1982) (Ervin, J., dissenting and concurring).
NOTES
[1] Section 440.20(15), Florida Statutes (1979), is a substantial codification of former industrial relations commission rule 9, referred to in Brown, 305 So.2d at 193.
[2] The group insurance plan provided disability pay for an "off-the-job illness or injury." Claimant received payments under the policy apparently as the result of her accident being reported to the insurance company by her employer as not job related.
[3] Cf. Domutz, supra, in which the court noted that the matter of total benefits exceeding the average weekly wage was not presented for decision in that case. 339 So.2d at 637.
[4] Our own brief research has produced at least one case on the point, Employers Reinsurance Corp. v. Beaty, 576 S.W.2d 481 (Tex.Civ.App. 1979). The Texas court concluded under statutory provisions differing somewhat from Florida's, that remuneration for holidays and vacations should be included in determining the employee's "average daily wage."
[5] Section 440.02(12), Florida Statutes (1978) provides, in part:

(12) "Wages" means the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the injury, including the reasonable value of board, rent, housing, lodging, or similar advantage received from the employer... .